**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DONNA M. DURGAN,

                             Plaintiff,

     v.                                         No. 12-CV-279
                                               (DNH/CFH)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                                Defendant.

_____

**APPEARANCES:**                            **OF COUNSEL:**

THE ANTONOWICZ GROUP        PETER W. ANTONOWICZ, ESQ.
Attorney for Plaintiff
148 West Dominick Street
Rome, New York 13440

HON. RICHARD S. HARTUNIAN     ANDREEA L. LECHLEITNER, ESQ.
United States Attorney for the          Special Assistant United States Attorney
    Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

       Plaintiff Donna M. Durgan ("Durgan") brings this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.

Durgan moves for a finding of disability and the Commissioner cross-moves for a

judgment on the pleadings.  Dkt. Nos. 14, 15.  For the reasons which follow, it is

_____

       [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

recommended that the Commissioner's decision be remanded.

# I. Background

## A. Facts

Born on November 7, 1959, Durgan was fifty years old when she applied for disability benefits. T. 132.[2] Durgen completed school through eleventh grade and received no further education or vocational training. T. 56. Durgan's previous work experience includes production, customer service, and clerical work. T. 336. Durgan alleges disability from multiple impairments including fibromyalgia, a seizure disorder, anxiety attacks, depression, chronic obstructive pulmonary disease, and intestinal issues. T. 59-60.

## B. Procedural History

In early May 2010, Durgan filed an application for disability insurance benefits and social security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset date of January 1, 2002. T. 132-141. That application was denied on July 27, 2010. T. 77-81. Durgan requested a hearing before an administrative law judge ("ALJ"), Thomas Tielena, which was held on June 23, 2011. T. 51-75, 83-123. In a decision dated July 19, 2011, the ALJ held that Durgan was not entitled to disability benefits. T. 22-34. Durgan's counsel filed a timely request for review with the Appeals Council and after an initial denial and subsequent review, on

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 10.

January 27, 2012, the request was ultimately denied, thus making the ALJ's findings the final decision of the Commissioner.  T. 2-21.  This action followed.

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry, 675 F.2d at 467.  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.

## B.  Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ."  42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.   Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

First, the [Commissioner] considers whether the claimant is currently

_____

[3] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  Donato v. Sec 'y of Health and Human Servs., 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation omitted).

engaged in substantial gainful activity.  If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).


### C. ALJ Tielena's Findings

Durgan, represented by counsel, testified at the hearing held on June 23, 2011. T. 51-74 (transcript from the administrative hearing).  Using the five-step disability sequential evaluation, the ALJ found that Durgan (1) had not engaged in substantial gainful activity since the Spring of 2010, the application date; (2) had the following severe medically determinable impairments, fibromyalgia and a seizure disorder; (3) did not have an impairment, alone or in combination, sufficient to meet the listed

impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintains "the Residual Functional Capacity [("RFC")] to perform work requiring medium exertion, but cannot work in hazardous conditions, at heights or with moving machinery due to her seizure disorder" and thus, (5) given her age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy.  Therefore, a determination of not disabled was made.

## D.  Durgan's Contentions

Durgan first contends that the ALJ failed to properly determine the severity of her cervical spine impairments.  Durgan next contends that the ALJ failed to properly establish her RFC, based in part on the ALJ's failure to properly apply the treating physician rule.  Durgan lastly asserts that ALJ improperly evaluated Durgan's credibility, specifically her allegations of disabling pain.

## 1. Severity and Duration

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities for a continuous period of time of not less than one year.  See subsection II(B) supra.  Thus, a diagnosis alone is insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work

activities.  20 C.F.R. § 404.1521(b). The ability to do basic work activities is defined as

"the abilities and activities necessary to do most jobs."  Id.  Basic work activities which

are relevant for evaluating the severity of an impairment include:

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.; see also Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996); see also

Social Security Ruling 85-28, 1985 WL 56856, at *3-4, Titles II and XVI: Medical

Impairments That Are Not Severe (S.S.A. 1985).

Furthermore, the plaintiff must also establish the duration of the impairment,

namely that it is "expected to result in death [or] has lasted or is expected to last for a

continuous period of at least [twelve] months."  Gray v. Astrue, No. 04-CV-3736

(KMW/JCF), 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009) (citing 20 C.F.R. §

416.909).  "Courts, therefore, reverse for legal error SSA decisions that inappropriately

conflate the analysis of severity with the analysis of duration."  Id. (citing Stadler v.

Barnhart, 464 F. Supp. 2d 183, 189 (W.D.N.Y. Dec. 11, 2006) ("To state that an

impairment is not severe because it does not meet the twelve-month requirement . . . is

inconsistent with the . . . regulations.").

When denying a claim based upon insufficient duration, the ALJ must explicitly

express a finding that:

> Within 12 months of onset, there was or is expected to be sufficient restoration of function so that there is or will be no significant limitation of the ability to perform basic work-related functions . . . ; or

> Within 12 months of onset, there was or is expected to be sufficient restoration of function so that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in [substantial gainful activity], considering pertinent vocational factors.

Stadler, 464 F. Supp. 2d at 190 (quoting S.S.R. 82-52, at *3) (internal citations omitted). "In the latter case, a thorough documentation, evaluation, and rationalization of the [plaintiff's] RFC, work history, and vocational potential will be necessary." S.S.R. 82-52, at *3 (citations omitted).


### i. Temporomandibular Joint Syndrome ("TMJ")

The ALJ found that while Durgan "has a TMJ disorder, . . . the record fails to show complaints related to it[, thus i]t is not a severe impairment." T. 31. Durgan did not provide any testimony about the limitations associated with her TMJ, failing to indicate that she had difficulty with basic work functions, like speaking or communicating, because of the condition or associated pain. Additionally, Durgan's counsel conceded that she had failed to undergo treatment for her TMJ. Pl. Mem. of Law (Dkt. No. 14) at 10. Thus, because more than a diagnosis is required to indicate a severe impairment and the record fails to illustrate any significant limitations to any basic work activities, the decision of the Commissioner is supported by substantial evidence.

To the extent that Durgan contends that "TMJ . . . [is] not improved without

medical intervention," and that the duration of the impairment will continue for more than a year, Pl. Mem. of Law at 10, such arguments are irrelevant. "Severity and duration are separate considerations that require separate analsyes." Gray, 2009 WL 1598798, at *6 (citations omitted). Here, the ALJ determined, which as discussed above is supported by substantial evidence, that Durgan's TMJ was not a severe impairment. As the first part of step two cannot be fulfilled, any arguments regarding the duration of the impairment are irrelevant as, even if the impairment continues infinitely, it is not of the requisite severity to establish a disability.

Accordingly, the Commissioner's decision on this issue is affirmed.

### ii. Cervical Complaints

The ALJ found that Durgan's

> cervical complaints may represent a severe impairment, but it has only been shown to have been present since January of 2011 and has not yet met the durational requirement by being present or by being expected to be present at the requisite level of severity for a continuous period of [twelve] months . . . .

T. 31. It does not appear that the ALJ conflated the severity and duration analyses, which would constitute reversible error. Gray, 2009 WL 1598798, at *5. However, the ALJ did fail to complete the severity analysis, indicating that the cervical conditions "may represent a severe impairment," but failing to come to an ultimate conclusion. T. 31. Instead, the ALJ relied solely upon the duration prong of the analysis to determine that Durgan was not disabled.

Pursuant to the S.S.R., if the ALJ is denying disability based upon an insufficient

9

duration of the impairment, a discussion which includes "thorough documentation, evaluation, and rationalization of [Durgan's] RFC, work history, and vocational potential will be necessary." S.S.R. 82-52. In this case, the ALJ's "brief statement" that concludes that the durational requirement has not yet been met "d[oes] not satisfy the . . . [Social Security] requirements." Stadler, 464 F. Supp. 2d at 190; see also S.S.R. 82-52.

As discussed infra, this case should be remanded for reasons outside of the aforementioned failure of the ALJ to engage in an appropriate analysis regarding the duration prong of step two. However, in light of this recommendation, upon remand the appropriate duration analysis should also be undertaken. It is important to note that the Second Circuit has held that where an ALJ identified some, but arguably not all, of the severe impairments at step two, and continued to "proceed[] through the sequential evaluation process . . . consider[ing] the 'combination of impairments' and the combined effect of 'all symptoms' in making his [or her] determination," the ALJ's decision would not warrant remanding. Stanton v. Astrue, 370 Fed. Appx. 231, 233 n.1 (2d Cir. Mar. 24, 2010) (citing 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's . . . impairments are of a sufficient medical severity . . . [to] be the basis of eligibility . . . the Commissioner . . . shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")).

If the duration analysis was the sole basis for remand, it would be inappropriate as the ALJ determined that Durgan's fibromyalgia was severe, considered "the entire record" prior to determining Durgan's RFC, and continued to move through the

sequential process.  However, given the recommendation that the decision be remanded, it is also recommended that, upon the Commissioner's reconsideration of the case, the Commissioner reexamine step two and engage in the appropriate duration analysis.

## 2. RFC

The ALJ determined that Durgan retained the RFC "to perform work requiring medium exertion[4], but [was precluded from] work[ing] in hazardous conditions, at heights, or with moving machinery due to her seizure disorder."  T. 31.  In reaching this assessment, the ALJ gave "[g]reat weight" to the assessment of consultative examiner Dr. Ganesh and medical review physician Dale.  T. 33.  Conversely, the ALJ gave "[l]ittle evidentiary weight" to Durgan's treating physician, Dr. Taylor.  Id.

### i.  Treating Physician's Rule

Durgan first contends that the ALJ erred by failing to accord Durgan's treating physician, Dr. Taylor, more than "little evidentiary weight."  T. 33.  When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of

---

[4] "Medium work involves lifting no more than [fifty] pounds at a time with frequent lifting or carrying of objects weighting up to [twenty five] pounds.  If someone can do medium work . . . he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c); see also S.S.R. 83-10.  Moreover, "[a] full range of medium work requires standing or walking, off an on, for a total of approximately [six] hours in an [eight]-hour workday . . . [and] sitting may occur intermittently during the remaining time."  S.S.R. 83-10.

disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2) (2005); Shaw, 221 F.3d at 134.  "This rule applies equally to retrospective opinions given by treating physicians."  Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D. Conn. 2009) (citations omitted).  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  Id. at 133-34; see 20 C.F.R. § 404.1527(e) (2005).

The ALJ concluded that, despite being the family doctor, "the medical evidence both taken as a whole and as found in Dr. Taylor's treatment notes do not support the limitations stated."  Id.  On  June 20, 2011, Dr. Taylor concluded that Durgan

could walk a half block without having to rest, sit for [twenty]

minutes, and stand for [twenty] minutes, in an [eight]-hour
working day. [Durgan] could sit for less than [two] hours and
stand/walk for less than [two] hours.  If sitting, she would
need to be able to shift positions at will from sitting, standing
or walking and would have to take unscheduled breaks
about every [twenty] minutes, lasting about [thirty] minutes
each time.  Her legs should be elevated to [thirty] degrees
with prolonged sitting, and if working a sedentary job, should
be elevated [fifty percent] of the time.  She never could lift
and carry even less than [ten] pounds and she rarely could
twist, stoop, crouch or climb.  She could use her hands,
fingers and arms to grasp, turn, twist, engage in fine
manipulation and reach, but for only a small part of the day.
On average, she could likely be absent from work due to her
impairments of treatment over [four] days a month.

T. 32; <u>see</u> <u>also</u> T. 530-534 (fibromyalgia residual functional capacity questionnaire).

The record reveals that Dr. Taylor concluded that Durgan had many limitations.

However, Dr. Taylor's treatment history with Durgan prior to the June 2011 assessment

reveal a less intense medical history.  In September 2010, Durgan twice presented in

no physical distress with unrelated complaints and no discussion of pain or

fibromyalgia.  T. 434-35.  In October 2010, Durgan complained of right shoulder pain,

but had full range of motion and refused to go to physical therapy.  T. 433.  In

December 2010, Durgan twice visited, the first time complaining of anxiety but no

physical pain and the second presenting with constant chest pain which was treated

with Prevacid.  T. 431-32.  Durgan returned in January 2011, with similar complaints,

being diagnosed with gastric problems.  T. 460.  Durgan saw Dr. Taylor in February of

2011 for unrelated symptoms, complaining of thigh pain for two weeks and fatigue, but

no weakness.  T. 459.  In March 2011, Dr. Taylor's notes indicated that Durgan has

cervical disc syndrome, fibromyalgia, bilateral shoulder pain and chronic

musculoskeletal chest pain.  T. 458.  This is the first type of such entry mentioning

fibromyalgia, despite the fact that Dr. Taylor received a copy of the rheumatologist's diagnosis of this which occurred on March 22, 2010. T. 227-29. The notes also indicate that while Durgan complained of pain, she still had full range of motion in her shoulder. T. 458. In April 2011, Durgan returned reporting that her pain increased after physical therapy so she engaged in exercises at home, though was only noted to have shoulder strain. T. 457. Later in April, Durgan returned with no new complaints and a notation that her fibromyalgia was stable on medication. T. 537. In May and June, Dr. Taylor noted that Durgan was experiencing worsening pain, concluding in June that the pain and fatigue were "significant." T. 535-36.

Dr. Taylor's conclusions in her RFC assessment are far more severe and restrictive than what would be expected given the information in her treatment notes. Dr. Taylor's notes do not discuss any significant limitations to Durgan's ability to sit, stand, or walk. In fact, only a few months before the assessment, Dr. Taylor concluded that Durgan's fibromyalgia was stable and that she had no new complaints. Furthermore, Dr. Taylor's notes do not incorporate severe subjective complaints of pain or debility from Durgan. Accordingly, Dr. Taylor's most recent assessment is contrary to the general findings of her treatment notes for the two years she saw Durgen.

Furthermore, Dr. Taylor's conclusions are inconsistent with the record as a whole. Dr. Taylor's restrictions are unsupported by the multiple diagnostic studies in the record which revealed very mild results. The January 2011 MRI of Durgan's spine revealed minimal disc bulging and small disc protrusions with some accompanying spurring. T. 418-19. The January 2011 nerve conduction study showed mild carpal tunnel and radiculoipathy. T. 416. Such minimal findings are contrary to Dr. Taylor's

14

RFC statements.

Moreover, Dr. Taylor's conclusions are contrary to the findings of the medical examiners. On June 28, 2010, Durgan underwent both a psychiatric and internal medicine examination. T. 336-45. The psychiatric examiner, Dr. Noia, observed a normal gait, no assistive devices, normal posture, and a cooperative demeanor. T. 337. Durgan's thought processes were coherent; attention, concentration and memory intact; and intellectual functioning average. T. 338. Durgan reported that she could independently tend to her daily hygiene, cook and prepare food, engage in general cleaning and laundry, shop with her boyfriend, and drive short distances. Id. Durgan spent her day completing chores, resting, watching television, and listening to the radio. Id. The internal examiner, Dr. Ganesh, reported that Durgan could cook six times a week, clean three times a week, do laundry twice a week, shop once a week, bathe and dress daily, and watch television and listen to the radio daily. T. 342. Durgan's gait was normal, she could fully squat, walk on her heels and toes, get on and off the examination table, and rise from a chair without difficulty. Id. Durgan's cervical spine showed full range of motion with no abnormalities and her joints were stable, though Dr. Ganesh reported sixteen tender points which are consistent with fibromyalgia. T. 343. Dr. Ganesh concluded that Durgan's "prognosis . . . [was] stable," and that she had "[n]o gross physician limitation noted to sitting, standing, walking, or the use of upper extremities. However, with the seizures, she should avoid activities such as diving, activities at heights or on machinery, and swimming." T. 344. Such assessments fail to incorporate any of the highly restrictive walking, sitting, standing, or lifting requirements which Dr. Taylor's assessment proffers. These opinions are consistent with the

15

diagnostic medical records and the majority of Dr. Taylor's medical notes.  Accordingly, the ALJ's decision to give Dr. Ganesh's opinion more credence, specifically in that his limitations are far less severe than those proffered by Dr. Taylor, is proper as such decisions are supported by substantial evidence in the medical record and the opinion of the other consultative examiner.

Moreover, Dr. Taylor's assessment seemed inconsistent with Durgan's other treating physician.  On September 28, 2010, Dr. Shalta, Durgan's neurologist, completed a RFC questionnaire and indicated that Durgan suffered from seizures which occurred once every three weeks.  T. 526.  While there were not always warning signs or consistent triggers which preceded the episodes, Dr. Shalta concluded that the seizures would not disrupt other coworkers, would not require unscheduled breaks during an eight-hour workday, and would allow for a moderately stressful job environment.  T. 526-28.  Dr. Shalta indicated that Durgan's employment limitations included only prohibitions against heights, driving, and swimming.  T. 529.

Accordingly, the ALJ's decision to accord little evidentiary weight to Dr. Taylor's assessments was not in error and should be affirmed.

### ii.  Substantial Evidence

Durgan also contends that the ALJ's RFC determination was not supported by substantial evidence.  RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R.  §§ 404.1545, 416.945.  "In

16

assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in Step 5 of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." Pourpre v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

> Each finding as to the plaintiff's functional abilities must be supported by substantial evidence because conclusory statements regarding plaintiff's capacities are not sufficient . . . Only after the ALJ has described the plaintiff's capabilities on a function-by-function basis supported by substantial evidence may RFC then be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

DiVetro v. Comm'r of Soc. Sec., No. 05-CV-830 (GLS/DEP), 2008 WL 3930032, at *2 (N.D.N.Y. Aug. 21, 2008) (internal quotation marks and citations omitted).

While Dr. Taylor's functional analysis regarding Durgan's physical limitations was not supported by substantial evidence, there are also no other assessments in the record which state how long Durgan can sit, stand, or walk in an eight-hour day. While Dr. Ganesh opined that Durgan has no "gross limitation" in her ability to sit, stand, or walk, he did not elaborate, nor did he particularly state what, if any, physical functional limitations Durgan suffered from. As discussed above, the less restrictive limitations proffered by Dr. Ganesh are supported by substantial evidence however, the failure to

specifically describe each of Durgan's function abilities was an error.

On July 23, 2010, medical records review physician Dale also provided a RFC assessment whereupon he concluded that Durgan's "complain[t]s of pain [were associated] with minimal objective findings." T. 368. Dale also opined that Durgan "manages her daily activities such as cooking, cleaning, shopping, dressing and bathing [and] . . . considering her pain from the fibromyalgia, she should be able to lift [fifty pounds] occ[assionally, twenty five pounds] freq[uently] in an [eight] hour workday with hazardous environmental restrictions." Id.

> It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consults, since such consultants are deemed to be qualified experts in the field of social security disability. Such reliance is particularly appropriate where . . . the opinions of these . . . State agency medical consultants are supported by the weight of the evidence.

See Fiozzo v. Barnhart, 2011 WL 677297, at *8 (N.D.N.Y. Jan. 19, 2011). Some of Dale's conclusions regarding Durgan's RFC are supported by substantial evidence. For example, Dale's assessment of environmental limitations Durgan should adhere to are supported by substantial evidence in the record, specifically the opinion of Durgan's treating neurologist who too advanced identical limitations. Similarly, the recitation of Durgan's ability to independently complete her own activities of daily living is also supported by substantial evidence, specifically the insights gathered by the examining consultative physicians Drs. Ganesh and Noia. However, the conclusion that Durgan was able to consistently lift a substantial amount of weight is not supported by substantial evidence as Dale fails to point to any particular findings in the medical record sustaining such conclusions. See Bechler v. Astrue, No. 07-CV-380 (LEK/VEB),

18

2009 WL 5219030, at *6 (N.D.N.Y. Dec. 31, 2009) (recommending remand of case where it was unclear if the reviewing physician had access to and examined all medical records and "failed to offer any evidence [or explanations]  to support his opinions.").

Since the ALJ's RFC, outside of the stated limitations against hazardous conditions, heights, and moving machinery, is not well-supported, it is recommend that the matter be remanded to the Commissioner for further consideration of this issue.

### 3. Subjective Complaints of Pain

The ALJ determines whether an ailment is an impairment based on a two-part test.  First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003). This primary evaluation includes subjective complaints of pain.  20 C.F.R. § 404.1529 (2003).  "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.'" Barringer, 358 F. Supp. 2d at 81 (quoting Crouch v. Comm'r of Soc. Sec. Admin., No. 6:01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence.  20 C.F.R. § 404.1529 (2003).  The claimant's credibility and motivation, as well as the medical

evidence of impairment, are used to evaluate the true extent of the alleged pain and the

degree to which it hampers the applicant's ability to engage in substantial gainful

employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978).  The ALJ must

consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

>  (i)  [The claimant's] daily activities;
>
>  (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
>  (iii) Precipitating and aggravating factors;
>
>  (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
>  (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
>  (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
>  (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Durgan claims that her credibility was inappropriately questioned because the

ALJ did not integrate all of Durgan's alleged symptoms of pain and limitations in his

opinion.  Durgan testified that the daily pain in her upper body is "stabbing", she wakes

every three hours because of it, and it occurs five days a week and lasts for eight hours

at a time.  T. 60-63.  Moreover, Durgan has difficulty completing household chores,

must rest for fifteen minutes every half an hour, has to raise her feet while she rests,

generally sits lopsided due to pain, can only sit upright and stand for about fifteen minutes at a time, and cannot lift more than one pound.  T. 67-70.  The ALJ noted while Durgan's "medically determinable impairment could reasonably expected to cause the alleged symptoms . . . her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible."  T. 32.  The ALJ rejected Durgan's testimony based upon the lack of support in the medical evidence as well as the failure to discuss her proposed, severely restrictive limitations with her providers during her visits.  Id.

Durgan's current contentions of additional disabling pain and restrictions are vitiated by her failure to undergo treatment for her TMJ and cervical condition, as well as her failure to refer to her positional restrictions and other exertional limitations during her numerous medical visits.  "A longitudinal medical record demonstrating an individual's attempts to seek medical treatment . . . and to follow that treatment once it is prescribed . . . [assists in] judging the credibility of the individual's statements."  SSR 96-7p, 1996 WL 374186, at *8.  A claimant may be deemed "less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical . . . records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."  Id.

Moreover, Durgan's abilities to engage in her activities of daily living, as reported and repeated by both the consultative examiners, are drastically different than those conveyed during her testimony.  Additionally, for the reasons discussed supra, the medical record does not support such severe restrictions.  As "[i]t is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to

appraise credibility of witnesses, . . . [i]f the [Commissioner's] findings are supported by substantial evidence . . . the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec., Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (citations and internal quotation marks omitted).

While the basis for the ALJ's rejection in this regard is adequately stated, and appears to draw ample support from substantial evidence in the record, it is not necessary to address this issue in light of the recommendation that this matter be remanded for additional consideration.

### E. Remand

A reviewing court has the authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3) (2003). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) (citations omitted). While the ALJ's decision to accord little weight to Durgan's treating physician was supported by substantial evidence and the finding that Durgan's subjective testimony was not fully credible appears to be facially supported by substantial evidence, the conclusion that Durgan was able to perform the full range of medium work was not. Thus, remand is necessary. During the course of the remand, the ALJ should engage in the appropriate durational analysis at step two and provide a specific assessment supporting the precise exertional and non-exertional functional abilities which Durgan retained.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1.  Durgan's motion for judgment on the pleadings (Dkt. No. 14) be **GRANTED**; and

2.  The Commissioner's decision finding disability be **VACATED** and the matter **REMANDED** to the agency for further consideration consistent with this recommendation.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Date: February 19, 2013
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge